## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------- x

In re:                                                                  )
                                                                        )    Chapter 11
HIGHVIEW POINT PARTNERS, LLC,                                            )
                                                                        )    Case No. 11-11432 (KJC)
                                            Debtor.                      )
------------------------------------------------------------------- x

## MOTION OF RECEIVER FOR MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC, AND AFFILIATES FOR ORDER (I) DISMISSING DEBTOR'S CHAPTER 11 CASE (A) FOR CAUSE (BAD FAITH) UNDER 11 U.S.C. § 1112(b), AND/OR (B) AS VIOLATIVE OF COURT ORDER, AND/OR (C) UNDER 11 U.S.C. § 305(a)(1), OR, ALTERNATIVELY, (II) TRANSFERRING VENUE TO THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF CONNECTICUT

John J. Carney, Esq. (the "Receiver"), as Court-appointed Receiver for Michael Kenwood Capital Management, LLC and certain affiliates (collectively, "MKCM" or "Kenwood") in Securities and Exchange Commission v. Michael Kenwood Capital Management, LLC, et al., Case No. 11-CV-00078 (JBA) (D. Conn. 2011) (the "Enforcement Action" or "Receivership Proceedings"), by and through his undersigned counsel, files this motion (the "Motion") and seeks entry of an order (I) dismissing the above-captioned chapter 11 case (the "Chapter 11 Case" or "Case") of Highview Point Partners, LLC ("Highview" or the "Debtor") (a) for cause (bad faith) under section 1112(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), and/or (b) for cause as violative of orders issued in the Enforcement Action by the United States District Court for the District of Connecticut (the "District Court"), and/or (c) declining to exercise jurisdiction over this Case and dismissing or suspending this Case under section 305(a)(1) of the Bankruptcy Code, or, *alternatively*, (II) transferring venue of this Case to the United States Bankruptcy Court for the District of Connecticut pursuant to 28 U.S.C. § 1412 and Rule 1014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the Receiver respectfully states as follows:

## PRELIMINARY STATEMENT

This Chapter 11 Case is a deliberate attempt by the Debtor and certain of its affiliates to delay, hinder, and frustrate the efforts of the Receiver, the Securities and Exchange Commission ("SEC"), and the District Court to recover and equitably distribute Kenwood's assets on behalf of the defrauded victims of a massive Ponzi scheme. Filed in bad faith and in deliberate violation of an injunction issued by a federal district court judge prohibiting litigation – including bankruptcy filings – involving assets belonging to the Receivership, the Case must be dismissed or, at a minimum, transferred to the District of Connecticut. Such action is necessary not just to minimize any further disruption to the District Court's administration of the Receivership Proceedings, but also to discourage future Ponzi scheme participants from abusing the bankruptcy process by engaging in "self-help" in violation of court orders and thereby attempting to circumvent federal court jurisdiction.

Highview is a non-operating investment adviser that directed fraudulent and illegal transfers between the Highview Funds (as defined below) it advised and various Kenwood entities. Highview, the Highview Funds and their principals have been the subjects of a months-long ongoing investigation by the SEC and the United States Attorney's Office for the District of Connecticut. Although Highview's chapter 11 petition was signed by Mr. Lopez, one of these principals under investigation, he chose to invoke his Fifth Amendment privilege against self-incrimination rather than answer questions related to the fraud when he was deposed by the Receiver. Mr. Lopez similarly refused to answer questions during an SEC examination of Highview. Following Mr. Lopez's refusal to cooperate in a statutorily sanctioned examination by

the SEC, and once the SEC assembled proof that the assets of Highview, the Highview Funds, their principals and affiliates, and Kenwood were inextricably commingled, the SEC sought court approval to expand the Receivership Proceedings to encompass both groups of entities. This Chapter 11 Case was filed hours after the SEC filed its motion in the District Court to add Highview and the Highview Funds to the SEC's Enforcement Action and appoint a receiver over these entities. The Debtor's bankruptcy petition was filed not to rehabilitate the Debtor or to preserve any going-concern value on behalf of creditors, but instead to stonewall the Receiver's investigation into the Debtor's fraud by attempting to use chapter 11 protection to escape the District Court's jurisdiction and, potentially, to place assets of Highview and the Highview Funds beyond the reach of the Receiver. Such a litigation tactic is not valid under the Bankruptcy Code and warrants dismissal of the petition as having been filed in bad faith. Highview, the Highview Funds, and Kenwood were operated as part of a single, unitary Ponzi scheme, and the SEC has already sought the appointment of a receiver over Highview and the Highview Funds. Accordingly, a single administrator (or, at least, one court) should oversee the collection and distribution of the affected assets. This Motion seeks to accomplish that objective.

## JURISDICTION AND VENUE

The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O). The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 305(a)(1), and 1112(b). The Receiver has standing to bring this motion under 11 U.S.C. § 1109(b) as a claimant of the Debtor's property and as a party in interest.

## BACKGROUND [1]

On May 6, 2011 (the "Petition Date"), Highview commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition"). In the ensuing nearly two weeks the Debtor did not file a single motion with this Court other than motions to admit its counsel *pro hac vice*–because the Debtor has no need for any Bankruptcy Code relief, other than the automatic stay.

A.     The Key Players

The Debtor is an investment adviser registered with the SEC, and served as the adviser to Highview Point Master Fund, Ltd. ("HP Master Fund"), an offshore hedge fund, and two feeder funds: the Highview Point Offshore Fund ("HVPO") and Highview Point LP ("HPLP"). HP Master Fund is based in the Cayman Islands; HPLP and HVPO are its only investors. HP Master Fund, HVPO, and HPLP are collectively referred to herein as the "Highview Funds." From 2005 through the fall of 2010, the Debtor was co-owned and managed by Francisco Illarramendi ("Illarramendi"). On March 7, 2011, Illarramendi pled guilty in the United States Court for the District of Connecticut to five criminal counts, including charges of securities fraud and investment adviser fraud in the action captioned United States v. Illarramendi, 3:11CR-41 (SRU). He is currently awaiting sentencing by the District Court.

B.     The Ponzi Scheme

The events leading to the filing of the Debtor's bankruptcy petition can be understood only in the context of the criminal behavior that led to the appointment of John J. Carney, Esq. as Receiver over all assets held by Kenwood–an affiliated unregistered investment adviser also co-owned and managed by Illarramendi, and ultimately, in Illarramendi's guilty plea. Like

---

[1]     Certain pleadings and documents from the Enforcement Proceeding are attached as exhibits to the Affidavit of Ona T. Wang ("Wang Aff.").

Kenwood, virtually all investors in the Highview Funds are offshore individuals and entities, and Kenwood and the Highview Funds share common investors. Illarramendi and two other individuals, Frank Lopez and Christopher Luth, owned and controlled the Debtor at its business location in Stamford, Connecticut. Mr. Lopez and Mr. Luth both invoked their Fifth Amendment privilege against self-incrimination when deposed pre-petition by the Receiver regarding their conduct related to the Debtor. Victor Chong, the CFO of Highview, similarly invoked his privilege against self-incrimination, and refused to answer questions at a deposition by the Receiver.

From 2005 through fall 2010, Illarramendi caused the Debtor, Kenwood, and the Highview Funds to engage in scores of extraordinarily complex and multi-layered transactions as part of a single, unified fraudulent scheme (the "Ponzi Scheme"). Certain funds affiliated with Kenwood (the "Kenwood Funds")[2] acted as counter-parties to certain of these transactions. The Ponzi Scheme began when Illarramendi and the Debtor attempted to conceal millions of dollars of Highview's losses by transferring monies between Highview and various offshore entities.

After the establishment of the Kenwood entities and funds, Illarramendi conducted his fraud by operating Kenwood and Highview in tandem, engaging in many related transactions between the two fund groups which included purported loans and extensive undocumented transfers of cash between them. In essence, the Highview Funds are akin to early investors in a Ponzi scheme in that Illarramendi and Highview misappropriated and misused investor monies from the Highview Funds and then attempted to hide those losses by transferring investor monies from the Kenwood Funds to the Highview Funds, often mischaracterizing the misappropriation of funds as the liquidation or redemption of "investments." For example, in 2010, Illarramendi

---

[2]    The Kenwood Funds include: the Short Term Liquidity Fund I, Ltd. (the "STLF"), the MK Venezuela Fund, Ltd. (the "MK Venezuela Fund"), and the MK Special Opportunities Fund ("MK SOF").

and Highview attempted to hide the fact that they had misused approximately $169 million in investor assets from the Highview Funds by creating phony loan documents purporting to document a loan between the Highview Funds and one of the Kenwood Funds. In fact, no such loans existed. Illarramendi, the Highview principals, Highview and Kenwood all took substantial compensation directly from the Highview Funds and Kenwood Funds. Highview Point Partners failed to disclose that they used millions in investor funds from the Highview Funds and Kenwood Funds for non-investment activity and to pay debts and expenses of Highview Point Partners. As a result, and as further described below, the Debtor is in possession of tainted assets properly belonging to Kenwood for distribution by the Receiver.

C.    The SEC's Enforcement Action and the Receivership

On January 14, 2011, the SEC commenced the Enforcement Action against Illarramendi and several entities he controlled, including Kenwood (the "Receivership Defendants"), but not the Debtor, whose involvement in the fraud had not yet been clearly established. The complaint initiating the Enforcement Action alleges that Illarramendi, Kenwood, and certain affiliates misappropriated investor assets in violation of Section 206(1), (2) and (4) of the Investment Advisers Act of 1940 and Rule 206(4)-(8) thereunder. The SEC also sought equitable relief, including injunctions against future violations of the securities laws, disgorgement, prejudgment interest, and civil monetary penalties. Simultaneous with the filing of its complaint, the SEC sought emergency relief, including a preliminary injunction, in the form of an order freezing the assets of Kenwood and other defendants named in the Enforcement Action. The SEC also sought the appointment of a receiver over those assets.

On February 3, 2011, the District Court appointed John J. Carney, Esq. as Receiver over all assets "under the direct or indirect control" of Kenwood and Relief Defendants Michael

Kenwood Asset Management, LLC, MK Energy and Infrastructure, LLC, and MKEI Solar, LP. (the "Receivership"). As the investigation unfolded, the Receiver learned that the Receivership Defendants were only a subset of interrelated entities that had commingled investor funds and assets between various Kenwood and Highview entities, and had engaged in multiple transactions that were either poorly documented or not documented at all.

A motion to expand the scope and duties of the Receivership was filed on March 1, 2011. An Amended Order Appointing Receiver was entered on March 1, 2011, expanding both the duties of the Receiver and the definition of the "Receivership Estate." See Receivership Proceedings Dkt. No. 118 (the "Receivership Order"). As described more fully below, the Receivership Order prohibits entities in possession of Receivership Property (as defined in the Receivership Order excerpted below) from filing litigation, including a bankruptcy case, and from dissipating any assets that may be determined to be property of the Receivership Estate. See Receivership Order ¶¶ 26-29 excerpted infra in section (I)(B). Highview, its principals and its counsel were provided copies of the Receivership Order and asset freeze orders and were specifically advised in writing by the Receiver that they were in possession of Receivership Property prior to the filing of the Petition. On or about March 7, 2011, the United States Attorney's Office for the District of Connecticut ("USAO") filed a criminal information ("Information") against Illarramendi alleging that Illarramendi, with others, had engaged in the Ponzi Scheme involving hundreds of millions of dollars of money supplied primarily by foreign institutional and individual investors. See Information, United States v. Illarramendi, Case No. 11-cr-41.

The Receiver's investigation uncovered numerous improprieties related to Highview and the Highview Funds. In March and April 2011, the Receiver sent notice letters and copies of the

Receivership Order and other orders to Debtor and its principals through their counsel. See Wang Aff. ¶¶ 6-10. On May 6, 2011, the SEC filed a motion for leave to file a second amended complaint (the "SEC's Amended Complaint"), naming Highview as a defendant and naming HP Master Fund, HPLP and HVPO as relief defendants, and seeking to appoint a receiver pursuant to Federal Rule of Civil Procedure 66. That *same day*, Highview filed its Petition in this Case, choosing to file in its state of incorporation, Delaware, instead of Connecticut–the state where it is headquartered, where relevant acts took place, where evidence is located, and, most importantly, where the SEC's Enforcement Action has been proceeding for months in the District Court. The Receivership Estate is owed hundreds of millions of dollars by the Debtor and its affiliates and is therefore by far the largest creditor in the Case,[3] yet Highview inexplicably failed to schedule this debt on the Petition. The Debtor's "List of Creditors Holding 20 Largest Unsecured Claims" filed with the Petition lists only 13 creditors, three of which are claims of "unknown" value owed to insiders, and the remaining ten of which are claims of *de minimis* value.

On May 9, 2011, the District Court granted the SEC's motion for leave to file the SEC's Amended Complaint, finding that the "police power" exception to the automatic stay under section 362(b)(4) of the Bankruptcy Code applies to allow the SEC's case against the Debtor to go forward notwithstanding the bankruptcy filing and the provisions of the automatic stay. The SEC has also requested that the District Court expand the scope of the Receivership to include Debtor and the Highview Funds, and has also sought other injunctive relief.

---

[3] In a memorandum of law filed on May 18, 2011 with the District Court, Highview admits that it concluded that the Receiver was one of its largest creditors, and that this conclusion led to its decision to seek bankruptcy protection. Highview Memorandum of Law ("Highview Memo"), filed May 18, 2011, at 6.

On May 10, the District Court held an initial status hearing on the SEC's application. During the hearing, the District Court and other interested parties appeared to question the propriety of Highview's bankruptcy filing.[4]

## ARGUMENT

## I.    THE COURT SHOULD DISMISS THE CHAPTER 11 CASE

### A.    The Chapter 11 Petition Was Filed in Bad Faith

A debtor filing a bankruptcy petition must abide by the requirement that the petition be filed in good faith. See In re SGL Carbon Corp., 200 F.3d 154, 160-61 (3d Cir. 1999) (collecting cases and noting that every court of appeals to consider the question and numerous district and bankruptcy courts have found a duty of good faith applicable to chapter 11 cases). The duty of good faith applies with equal force in a chapter 11 case, whether commenced as a true reorganization case or to implement the orderly liquidation of a debtor's assets. See In re

---

[4]    See, e.g., May 10 Hearing Transcript ("Hearing Transcript"):

THE COURT: … The SEC claims that MK funds were improperly used with … Highview Point Partners and its entities to cover losses and that there was significant commingling of funds, some of which are funds that belong back with the MK entities and their investors. How does the [Debtor's proposed] chief restructuring officer deal with that?

MR. LOEWENSON: If Your Honor were to grant the SEC's motion to expand the powers of the Michael Kenwood receiver to include all of the Highview funds, I would think if that occurs then the chief restructuring officer would probably not be necessary.

Id. at 14:25 - 15:13.

THE COURT: I guess I became a little bit curious about if Highview Point Partners doesn't have any of the assets, what gets restructured.

Id. at 18:6-8.

THE COURT: So let me ask you, Mr. Loewenson, why if all of this has been so cooperative with the SEC, what should I make of the bankruptcy filing, the Chapter 11 filing right after the SEC moved to amend to add your client?

Id. at 39:22 - 40:1.

MR FORTINSKY: … I think there are substantial questions as to the propriety of the bankruptcy filing … When they say they've been cooperative and have done nothing to change the status quo, I find that hard to understand given, as the Court pointed out, number one, the fact that they immediately moved for bankruptcy protection after the filing of the amended complaint, and number two, I don't completely understand what they did, but it looks to me as though there may be some – as though the objective of transferring control over the funds from the Highview Point defendants to an offshore board of directors may in fact be to make it more difficult for those assets to be brought under the control of this Court. And so I am very nervous about the intentions of the Highview Point interests, and that's only reinforced by the fact that, as Mr. Barr pointed out, they have themselves taken the Fifth, and we can all draw legitimate adverse inferences from that.

Id. at 51:13-14, 52:17-53:10.

Integrated Telecom Express, Inc., 384 F.3d 108, 120 n.4 (3d Cir. 2004) ("We...reject the...argument that the good faith inquiry applies with less force to liquidation plans...The good faith requirement is necessitated as much by the hardship of Chapter 11 to certain interests as it is by the benefit to others.").

"At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purpose of bankruptcy." Id. The duty of good faith "is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy." SGL Carbon, 200 F.3d at 161 (quoting Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068, 1072 (5th Cir. 1986)). Without the duty of good faith, petitioners such as the Debtor here could abuse the bankruptcy process to "delay creditors without benefiting them in any way." Id. at 161-62. For the reasons stated below, the Debtor's bankruptcy petition should be dismissed as having failed to meet the requirement of good faith.

### 1.    The Bankruptcy Code Authorizes Dismissal of Cases for Bad Faith

Chapter 11 bankruptcy petitions may be dismissed for cause under section 1112(b) of the Bankruptcy Code unless filed in good faith.  See Integrated Telcom, 384 F.3d at 118.  The burden is on the debtor to establish that its petition has been filed in good faith.  SGL Carbon, 200 F.3d at 159-62; accord Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc., 324 F.3d 197, 211 (3d Cir. 2001) ("The debtor bears the burden of establishing good faith."). Determining whether the good faith requirement has been satisfied requires the Court to examine the "totality of facts and circumstances" to assess where the "petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." SGL Carbon, 200 F.3d 162.

Two questions are particularly relevant to the question of good faith: "(1) whether the petition serves a valid bankruptcy purpose...and (2) whether the petition is filed merely to obtain a tactical litigation advantage." Integrated Telecom, 384 F.3d at 120; accord In re Primestone Invest. Partners L.P., 272 B.R. 554, 557-58 (D. Del. 2002) ("The focus of the inquiry is whether the petition sought 'to achieve objectives outside the legitimate scope of the bankruptcy laws.'") (quoting SGL Carbon, 200 F.3d at 165). The Chapter 11 Case commenced by this Debtor fails both aspects of the test.

**2.      No Valid Bankruptcy Purpose Is Served By the Debtor's Chapter 11 Case**

The threshold question as to what constitutes a "valid bankruptcy purpose" is informed by the Third Circuit's decision in Integrated Telecom. There, the Third Circuit explained: "[t]he Supreme Court has identified two of the basic purposes of Chapter 11 as (1) 'preserving going concerns' and (2) 'maximizing property available to satisfy creditors.'" Integrated Telcom, 384 F.3d at 119 (quoting Bank of Am. Nat'l Trust & Sav. Ass'n v. N. LaSalle St. P'ship, 526 U.S. 434, 453 (1999)). The court explained that these purposes are reflected in the reorganization provisions of the Bankruptcy Code and the cases applying them through the common theme of "avoidance of the consequences of economic dismemberment and liquidation, and the preservation of ongoing values in a manner which does equity and is fair to the rights and interests of the parties affected." Integrated Telecom, 384 F.3d at 119 (quoting SGL Carbon, 200 F.3d at 161).

Of these two purposes animating the Bankruptcy Code, neither even potentially applies here. There is no going concern value to preserve; the Debtor no longer operates as a going concern and the Debtor's counsel admitted at a hearing before the District Court on May 10, 2011 that the Debtor has no intention of operating as an investment adviser ever again. See

Hearing Transcript at 41:1-5.[5] Presumably, that is exactly why, nearly two weeks into this Chapter 11 Case, the Debtor has not filed a single motion asking for any relief related to any asset or liability. There is little property to protect on behalf of creditors, because (again, according to statements made to the District Court by the Debtor's counsel and in the Debtor's chapter 11 petition) the Debtor's only listed assets consist of between $100,000 and $500,000 in cash. See Hearing Transcript at pp. 37-38, lines 24-25, 1-3.

Since it therefore is obvious that the Debtor cannot have filed the case to meet the going concern prong of Integrated Telecom, the question before this Court is whether this Chapter 11 Case can be viewed objectively as "maximizing property available to creditors" in any meaningful way. As explained by the Third Circuit, "[t]o say that liquidation under Chapter 11 maximizes the value of an entity is to say that there is some value that otherwise would be lost outside of bankruptcy." Integrated Telecom, 384 F.3d at 120. The clear answer here is that the Chapter 11 Case has no reasonable prospect of making more value available to creditors than would be available outside of bankruptcy and merely serves as an attempt to frustrate the efforts of the Receiver in marshalling the assets transferred between the Highview Funds and the Kenwood Funds at the direction of the Debtor. As the largest creditor in the Case, largely any recovery owed to the Debtor will ultimately flow to the Receiver whether or not the Case is dismissed.

The facts of this case demonstrate an even greater degree of bad faith than those found to be sufficient to dismiss the bankruptcy petition in Integrated Telecom. In Integrated Telecom, the debtor, which had few other creditors and had already substantially liquidated its business and

---

[5]   Mr. Loewenson (counsel for the Debtor) stated: "But the point here is that's over now, there is no more investment management for this investment manager to do, and we would like, as best we can, to step out of that conflagration [between Highview Funds investors and Kenwood investors] and let the remaining parties duke it out."

wound up its affairs, filed a chapter 11 petition solely or principally for the purpose of invoking section 502(b)(6) of the Bankruptcy Code to cap the landlord's claim to create a greater return for the debtor's shareholders. In rejecting the debtor's chapter 11 petition, the Third Circuit explained "we can identify no value for Integrated's assets that was threatened outside of bankruptcy by the collapse of Integrated's business model, but that could be preserved or maximized in an orderly liquidation under Chapter 11." 384 F.3d at 122.

In this Chapter 11 Case, the bankruptcy purpose of maximizing value for creditors cannot be served because there simply are no meaningful assets, let alone assets that would be preserved or enhanced in value through the bankruptcy process. Highview claims to have only a few hundred thousand dollars in cash as its only significant asset. Cash as an asset enjoys no special benefit from bankruptcy that would allow it to be worth more than it would be worth outside of bankruptcy. Thus, the only provision of the Bankruptcy Code being invoked here is the automatic stay -- an improper purpose, as set forth below.

Confronted with similar cases, numerous courts have found petitions lacking good faith. Chapter 11 petitions filed by dissolved entities with no or a handful of assets have repeatedly been rejected.[6] The same result has obtained for companies that, while they may not be formally dissolved, are holding companies or mere shells without operations or employees to speak of.[7]

---

[6]   See, e.g., In re Cinole, Inc., 339 B.R. 40, 45 (Bankr. W.D.N.Y. 2006) (dismissing bad faith chapter 11 petition filed by dissolved corporation where the debtor had no cash or working capital and no commitment for funding needed to attempt reorganization); In re Sydicom Corp., 268 B.R. 26, 54 (Bankr. S.D.N.Y. 2001) (finding cause to dismiss chapter 11 petition of dissolved corporation as filed in bad faith and alternatively granting stay relief where debtor had "no business" and was "no more than a shell, used for its shareholders' private purposes"); In re Aurora Invest. Inc., 134 B.R. 982, 986 (Bankr. M.D. Fla. 1991) (dismissing bad faith chapter 11 petition filed by dissolved corporation which had no employees, did not conduct any business in the orthodox sense and had no source of income).

[7]   See, e.g., In re Singer Furniture Acquisition Corp., 254 B.R. 46, 52-53 (Bankr. M.D. Fla. 2000) (dismissing chapter 11 petition as bad faith filing where debtor was a holding company that was not engaged in any business and had no employees); In re First Fin. Enter., Inc., 99 B.R. 751, 755-56 (Bankr. W.D. Tex. 1989) (dismissing for bad faith chapter 11 petition filed by holding company with no ongoing business operations); In re American Property Corp., 44 B.R. 180 (Bankr. M.D. Fla. 1984) (dismissing for bad faith chapter 11 petition

The consistent theme of these cases is that such debtors have nothing to reorganize or rehabilitate and no meaningful assets that can be preserved or enhanced via the bankruptcy process.[8]

The Debtor fits the profile in all material respects of prior bad actors whose chapter 11 petitions have been rejected as having been filed in bad faith. Highview is a defunct entity that played a central role in perpetuating Illarramendi's fraud, and a current managing member of Highview who authorized the filing of the Debtor's bankruptcy petition, Frank H. Lopez, is being investigated by the SEC for having participated in the Ponzi Scheme. Additionally, the Court may draw the inference of Lopez's involvement in the Ponzi Scheme from his assertion of his Fifth Amendment privileges during his deposition. This adverse inference should be particularly strong here, where the other principal managing partner and the CFO have each also invoked their Fifth Amendment privilege and refused to answer questions of the SEC and the Receiver. [9] Highview has ceased operations and has no other significant indicia of a going concern. See Highview Mem. at 6-7. In short, the Debtor has nothing of appreciable value to

_____

filed on behalf of corporation which was recently revived after four years inactive status where debtor's only asset was a lease, debtor had few creditors and debtor had no ongoing operations); In re Cardi Ventures, Inc., 59 B.R. 18, 22-23 (Bankr. S.D.N.Y. 1985) (dismissing petition for bad faith where debtor had no employees, where lease was debtor's only asset, and where the claims of non-insider creditors were either not due or would appear to be owed by the debtor's principal rather than the debtor).

[8]    See, e.g., In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1310 (2d Cir. 1997) ("When it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous.") (citing Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.), 931 F.2d 222, 227 (2d Cir. 1991); Y.J. Sons & Co., Inc. v. Anemone (In re Y. J. Sons & Co., Inc.), 212 B.R. 793, 802 (D.N.J. 1997) ("The absence of any likelihood of rehabilitation has been considered grounds for bad faith dismissal.").

[9]    See Hearing Transcript:

MS. KELLY: You have Highview [the Debtor], which has been represented by Chip Loewenson, and the way he has been in his dealings with us [the SEC] has been very helpful, very cooperative, but the principals of this entity have taken the Fifth. It was run for five years by someone who has pled guilty to a massive Ponzi scheme, and the principals have refused to cooperate with their own regulator when we went down to do an on-site examination of their books and records, much of which we think, with all due respect, particularly the [trade blotter], are fabricated.

Id. at 56:11-21.

MR. BARR: ... [W]hen the receiver in its investigation tried to gain the testimony and assistance of all of the people that are still in Highview Partners, they each invoked their Fifth Amendment rights and declined to provide any information.

Id. at 47:6-10.

offer its creditors and its creditors obtain no cognizable benefit from the commencement of the Chapter 11 Case. It should also be noted that the largest creditors the Debtor has scheduled on the Petition are insiders; the only non-insiders scheduled are listed as having claims valued at less than $16,000. These insiders are not entitled to any preference over the Receiver under the Bankruptcy Code. See Primestone Inv. Partners L.P., 272 B.R. 554, 557-58 (D. Del. 2002) (affirming dismissal of bankruptcy petition as filed in bad faith where petition filed within 16 hours of foreclosure auction, where petition subsequently listed only five unsecured creditors with claims totaling, at most, $532,368, and where petition had effect of staying related proceedings in Chancery court).

### 3. The Chapter 11 Case Has Been Commenced As An Improper Litigation Tactic To Attempt To Insulate the Debtor's Managers and Affiliates From the Receiver and the Jurisdiction of the District Court

It is well established within the Third Circuit that filing a chapter 11 petition merely to obtain a tactical litigation advantage is an independent basis for finding bad faith and dismissing the bankruptcy case.[10] This Court has also recently stated that "[a]s a general rule where ... the timing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." In re 15375 Memorial Corp., 400 B.R. 420, 427 (Bankr. D. Del. 2009) (quoting In re SGL Carbon Corp., 200 F.3d at 165).

It strains credulity to attribute to chance or coincidence that the Debtor chose to file its

---

[10] See Integrated Telecom, 384 F.3d at 128 (stating that courts "universally demand more of Chapter 11 petitions than a naked desire to stay pending litigation"); see also SGL Carbon, 200 F.3d at 165 ("[B]ecause filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within 'the legitimate scope of the bankruptcy laws,' courts have typically dismissed Chapter 11 petitions under these circumstances as well.") (quoting Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994)); In re Toth, 269 B.R. 587, 590 (Bankr. W.D. Pa. 2001) ("Several courts have held that the filing of a bankruptcy petition as a litigation tactic...is an indication of a bad faith filing.") (quoting In re Business Information Co., Inc., 81 B.R. 382, 385 (Bankr. W.D. Pa. 1988)).

chapter 11 petition just hours after the filing of the SEC's motion to amend its complaint and appoint a receiver over Highview and the Highview Funds, especially where the rush-job petition lists "unknown" as the amount of the claim of the listed three largest creditors (all of whom are insiders) and no relief was sought in the case since it was filed. Although bankruptcy has nothing of value to offer the Debtor's creditors (the largest of which is the Receivership Estate), bankruptcy arguably does afford the advantage of automatic stay protections (to the extent not barred by the police power exception) that could impede the Receiver's efforts to discharge his duties under the Receivership Order. Specifically, in District Court proceedings and in the Petition the Debtor has articulated an intention to retain a Chief Restructuring Officer ("CRO") to reorganize the Debtor - despite the fact that the Debtor has no meaningful assets to reorganize - and to create the appearance of a fair administration of approximately $230 million believed to be possessed by the non-debtor Highview Funds in offshore accounts.[11] Tellingly, Highview admits, in briefing to the District Court, that it concluded that the claims and potential claims by the SEC and the Receiver, among others, "far exceeded its assets," Highview Memo at 6, yet Highview failed to list the Receiver or the SEC on its creditors' list. This activity amounts to nothing more than an attempt by Highview to use the bankruptcy process to usurp the District Court and Receiver's authority and bifurcate jurisdiction over the Receivership into Highview "winners" and Kenwood "losers" separated by independent (and potentially conflicting) processes administered by the Connecticut District Court and the Delaware Bankruptcy Court (and, potentially, a foreign court).[12] The automatic stay might also be used to attempt to frustrate

---

[11]  See Hearing Transcript at 11:21-24:
MR LOEWENSON: "We intend in the near future to file a motion before the bankruptcy court for approval of Highview Point Partners to hire Louie Freeh as our chief restructuring officer."
[12]  See Hearing Transcript at p. 14, lines 2-18:
THE COURT: ... [W]hat happens if the Court concludes that the chief restructuring officer position doesn't accomplish the repatriation function that the currently-appointed receiver is charged with? What happens then? In other words, if the Court believed that the Highview Point entities should come under the receivership order

the Receiver's ability to investigate the fraud and to bring claims against the Debtor.[13] In sum, the Debtor has wrongfully employed the bankruptcy process as a "sword" for the benefit of the non-debtor Highview Funds and affiliates, rather than as the "shield" it was intended to be. See In re Briarpatch Film Corp., 281 B.R. 820, 834 (Bankr. S.D.N.Y. 2002) (dismissing chapter 11 petition for bad faith where debtor attempted to avail itself of the automatic stay for improper purpose of frustrating state court litigation).

## B.     The Chapter 11 Case Violates the Orders of the District Court

The Petition should also be dismissed for cause because the Chapter 11 Case is prohibited by the Receivership Order of the District Court. The Receivership Order enjoins

> all persons receiving notice of this Order ... from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> (A)     Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

> (B)     Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

> (C)     Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or the Receivership Entities, attempting to modify, cancel, terminate, call,

---

as the SEC proposes in its motion ... what then happens in bankruptcy court with the chief restructuring officer's responsibility?

MR. LOEWENSON: Judge, I think there would be – I mean, Highview Point Partners would be subject to two different orders of two different courts.

[13]     Debtor's counsel has recently informed Receiver's counsel that Debtor will continue to produce documents previously subpoenaed in the Receivership Proceedings.

extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Entities or which otherwise affects any Receivership Property; or,

(D) Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

Receivership Order ¶ 26.

As discussed above, Debtor and its principals were notified, through counsel, they may be holding Receivership Property and were arguably enjoined from taking any action that might violate Paragraph 26.

"Receivership Property" is defined as:

monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property");

Receivership Order ¶ 7(A).

The SEC's Amended Complaint alleges that tens of millions of dollars were transferred over the years from the Receivership Entities[14] to the Debtor or the Highview Funds. SEC Amended Complaint ¶¶ 31-33. Accordingly, a substantial portion of the $230 million held by the Highview Funds constitutes Receivership Property, and the Receiver has the duty to "take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property." Receivership Order ¶ 7(G). Furthermore, since the Debtor possesses or controls assets derived from the Ponzi Scheme, that

---

[14] The Receivership Entities are defined in the Receivership Order as The Michael Kenwood Group, LLC; Michael Kenwood Capital Management, LLC; Michael Kenwood Asset Management, LLC; MK Energy and Infrastructure, LLC; MKEI Solar, LP; MK Automotive, LLC; MK Technology, LLC; Michael Kenwood Consulting, LLC; MK International Advisory Services, LLC; MKG-Atlantic Investment, LLC; Michael Kenwood Nuclear Energy, LLC; MyTcart, LLC; TUOL, LLC; MKCM Merger Sub, LLC; MK Special Opportunity Fund, Ltd.; MK Venezuela Fund, Ltd.; and Short Term Liquidity Fund I, Ltd. See Receivership Order ¶ 1.

property falls under the jurisdiction of the District Court, is merely held by the debtor in constructive trust, and does not constitute property of the Debtor's estate. See In re Teltronics, 649 F.2d 1236, 1239 (7th Cir. 1981) ("it is settled that property obtained by fraud of the bankrupt is not part of the bankrupt's estate.") (citing cases omitted). The Case should therefore be dismissed so as to avoid the inconsistent results likely to emanate from two separate courts applying two different bodies of law while attempting to exercise jurisdiction over the same property whose origins are likely to be subject to dispute.

The Receivership Order also explicitly enjoins the following litigation:

> All civil legal proceedings of any nature, including, but not limited to, **bankruptcy proceedings**, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature: (a) against the Receiver, in his capacity as Receiver; (b) **involving any Receivership Property, wherever located**; (c) the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise.

Receivership Order ¶ 29 (emphasis added).

Highview violated the Receivership Order by filing the Petition.[15] First, the Petition interferes with the Receiver's efforts to "take control of Receivership Property" because monies, funds, or securities in the Debtor's possession originated from the Ponzi Scheme and therefore are subject to the Receiver's claim. Filing the Petition therefore violated Paragraph 26 of the Receivership Order. Because the Petition "involves" Receivership Property, filing the Petition also violated Paragraph 29 of the Receivership Order. Highview and its principals were given notice of the Receivership Order by the Receiver through Debtor's counsel, yet the Debtor declined to seek

---

[15] The Receiver reserves the right to seek appropriate relief from the District Court on account of the Debtor's violations of the Receivership Order. See Commodity Futures Trading Comm'n v. FITC, Inc., 52 B.R. 935, 936 -937 (N.D. Cal., 1985) (ordering receivership defendant – under threat of contempt – to withdraw bankruptcy petition filed without consent of the district court where filing of petition amounted to "obstructionist tactics" against the receiver).

relief from or clarification of the Receivership Order prior to filing this Chapter 11 Case. As a result, the Debtor is pursuing this Case in violation of the District Court order.

A federal district court has *in rem* jurisdiction over receivership property and necessarily possesses broad powers to protect that property, and its appointed receiver, from interference by creditors or other courts. The receivership court (i.e., the District Court) has the power to determine in the first instance whether and to what extent it will permit creditors to obtain possession of property in the hands of its receiver, and whether it will allow another court to interfere with its jurisdiction over that property. As a result, "[d]istrict courts may issue anti-litigation injunctions barring bankruptcy filings as part of their broad equitable powers in the context of an SEC receivership." SEC v. Byers, 609 F.3d 87, 91 (2d Cir. 2010) (denying creditors committee motion to lift an anti-bankruptcy injunction).[16]

In Byers, a creditors committee sought leave of the district court to file an involuntary bankruptcy petition against a company in receivership, and the district court's denial of that request was upheld on appeal to the Second Circuit. The order prohibiting the commencement of

---

[16] Debtor's counsel may assert that bankruptcy is a more appropriate forum for marshalling the Receivership Property than the Receivership Proceedings. Two decisions of the Second Circuit Court of Appeals in the same case demonstrate the fallacy of that contention. As set forth above in SEC v. Byers, 609 F.3d 87 ("Byers I"), the Second Circuit upheld an injunction of the United States District Court enjoining all entities from placing the entity in receivership in an involuntary bankruptcy. In a later decision in the same case, the Second Circuit upheld the district court's determination that liquidation through receivership was more favorable to the receivership estate than liquidation through bankruptcy. See SEC v. Malek, 397 Fed. Appx. 711, 714-15 (2d Cir. 2010) ("Byers II"). While the Byers II decision did note some case-law "express[ing] a preference against the liquidation of defendant corporations through the mechanism of federal securities receiverships," the court proceeded to draw important distinctions relevant to this proceeding, including the differences between the investigative aspects of a receivership case and liquidation. In addition, the court emphasized that "despite our reservations about liquidation occurring through receivership, 'we have never vacated or modified a receivership order on the ground that a district court improperly attempted to effect a liquidation.'" See generally Byers II at 714-715 (internal citation omitted) ("Nevertheless, in Credit Bancorp, we upheld the district court's approval of a distribution plan similar to the one at issue, effecting a partial liquidation of the receivership estate with subsequent distributions to occur in the future as additional assets became liquid or otherwise available for distribution, and without discussion of the district court's authority to do so.") (citing SEC v. Credit Bancorp, 290 F.3d 80 at 85 (2d Cir. 2002)). At the current time, the Receiver is still investigating the fraud and that work should continue to occur in the context of the Receivership. It remains an open question whether a bankruptcy for all or some of the entities subject to the Receivership Order should occur at some point in the future as part of an overall liquidation.

a bankruptcy case in <u>Byers</u> was nearly identical to the prohibition set forth in the District Court's Receivership Order here.[17] But in this Case, the Debtor has gone much further than the committee in <u>Byers</u>: instead of seeking leave of the District Court or a clarification of the Receivership Order, the Debtor has engaged in "self-help" by disregarding the District Court's order entirely and filing the Petition without any consultation with either the District Court or the Receiver, and with full knowledge that enforcement proceedings against the Highview Defendants in the District of Connecticut had already been filed. The Petition violates the Receivership Order both by the fact of its existence and by attempting to remove Receivership Property held by Highview further from the reach of the Receiver. As a result, the Chapter 11 Case should be dismissed in order to uphold and enforce the jurisdiction of the District Court. See <u>U.S. v. Vanguard Inv. Co., Inc.</u>, 907 F.2d 439, 440 (4th Cir. 1990) (affirming invalidation of voluntary bankruptcy petition filed in violation of district court temporary restraining order).

### C. The Interests of Creditors and the Debtor Would Be Better Served by Dismissal or Suspension of the Chapter 11 Case

Section 305(a)(1) of the Bankruptcy Code states, in pertinent part: "The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceeding in a case under this title, at any time if…the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a). Under the present circumstances, there is little doubt that the interests of the Debtor (as distinct from its manager and affiliates) and the Debtor's creditors would be better served without the cost and delay attendant to this Chapter 11 Case.

---

[17]  See <u>Byers I</u>, 609 F.3d at 90 (ordering that "[n]o person or entity, including any creditor or claimant against any of the Defendants, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the taking control, possession, or management of the assets, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order.").

21

In applying section 305(a),

> courts have considered a wide range of factors, including but not limited
> to who filed the bankruptcy petition, the availability of another forum to
> resolve the pending disputes, the necessity of federal proceedings to
> achieve a just and equitable solution, the expense of federal proceedings in
> comparison with the proceedings in another forum, the purpose of the
> party seeking to remain in bankruptcy court, the economy and efficiency
> of having the bankruptcy court handle the matter and the possible
> prejudice to various parties.

In re Mazzocone, 200 B.R. 568, 575 (E.D. Pa. 1996). Here, virtually all of the applicable factors

point directly toward abstention from hearing or, more appropriately, dismissing this Chapter 11

Case. First and foremost, there is no need for this case because there is neither a going concern to

protect nor meaningful assets to maximize or preserve. See *supra* Section I(A)(2). Second, the

Chapter 11 Case adds another layer of expense, delay and inefficiency to the administration of

the Receivership by forcing two separate legal proceedings (each with its own investigators,

attorneys, applicable law, and court systems) to work in parallel with one another, likely

producing inconsistent or irreconcilable results. Third, the Debtor may seek to use the Chapter 11

Case and automatic stay to attempt to hinder the Receiver's pursuit of claims not just against the

Debtor, but also against the non-debtor Highview Funds and their principals to whatever extent

such actions might be claimed to constitute property of the Debtor's estate. Fourth, while the

Debtor voluntarily commenced the Chapter 11 Case, all indications are that the decision was

made for the benefit of the Debtor's insiders and control parties and not for the benefit of the

Debtor itself or its non-insider creditors. Fifth, because the District Court has ruled that the

SEC's "police power" excepts the Enforcement Action from the automatic stay, the Enforcement

Action will proceed in Connecticut whether or not the Court should grant this Motion and

dismiss the Chapter 11 Case. In short, nearly all of the considerations that warrant the dismissal

of the Chapter 11 Case for bad faith also support this Court in exercising its discretion to dismiss

this Chapter 11 Case under section 305(a) of the Bankruptcy Code.

## II. ALTERNATIVELY, THE COURT SHOULD TRANSFER VENUE OF THE CHAPTER 11 CASE TO THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF CONNECTICUT

If the Court denies the Receiver's Motion to dismiss the Chapter 11 Case, the Receiver moves in the alternative to transfer the Case to the Bankruptcy Court for the District of Connecticut. Although venue of a bankruptcy case is proper in a corporate debtor's state of incorporation (28 U.S.C. § 1408), a court may transfer a case to another district if such a transfer would serve the interests of justice or the convenience of the parties. See 28 U.S.C. § 1412; see also Fed. R. Bankr. P. 1014. It is well settled that in deciding a motion for transfer of venue, a court should balance a debtor's choice of forum with several other factors, including "the proximity of the court to interested parties as well as the location of the debtor's assets, the economics of administering the estate and the relative economic harm to the debtor and other interested parties." In re Del. & Hudson Ry. Co., 96 B.R. 467, 468 (Bankr. D. Del. 1998). As Connecticut is the state where the Debtor maintained its principal place of business, where the evidence and witnesses are located, where the Debtor and its principals participated in the fraud, and the state where the SEC's Enforcement Action and other investigations are being conducted, there is no forum more appropriate for the debtor's Chapter 11 Case than the District of Connecticut.

This Court has consistently held that transfer of venue is appropriate where the moving party has demonstrated that the interests of justice and convenience of the parties weigh in favor of the transfer.[18] This case presents an even more compelling reason to transfer venue than the

---

[18] See, e.g., In re Innovative Commun. Co., LLC, 358 B.R. 120, 121 (Bankr. D. Del. 2006) (transferring cases to the District of the Virgin Islands, Bankruptcy Division); In re El Comandante Mgmt. Co. LLC, 04-12972 (PJW) (Bankr. D. Del. Oct. 22, 2004) (ORDER) (transferring case to the District of Puerto Rico); In re Liberate

many Delaware cases that have done so previously. The Debtor's control persons (Mr. Lopez and Mr. Luth) and affiliates are located in Connecticut and the Debtor lists Stamford, Connecticut as its address on its chapter 11 petition. The Debtor has reported no assets situated in Delaware. In fact, most of the Debtor's assets are believed to relate to management fees collected from commingled funds that were operated in Connecticut. Given the extent to which the assets of the Receivership Entities and Funds were commingled with the assets of Highview and the Highview Funds, the prosecution of the Debtor's Chapter 11 Case in a separate jurisdiction would add significant costs both to the Receiver's administration of the Receivership Estate and possibly to the SEC's investigation (both of which are primarily situated in Connecticut). Conversely, transferring the Case to Connecticut would pose no significant additional burden to either the Debtor or the Debtor's creditors: 11 of the Debtor's 13 scheduled creditors list a New York or Connecticut address, while none lists a Delaware address.

---

Techs., 04-11299 (PJW) (Bankr. D. Del. May 12, 2004) (ORDER) (transferring case to the Northern District of California, San Francisco Division); In re CMC Acquisition Co., Inc., 02-11747 (PJW) (Bankr. D. Del. February 21, 2003) (ORDER) (transferring case to the Bankruptcy Court for the Northern District of Ohio); In re MarchFirst, Inc., et al., 01-1381 (JJF) (Bankr. D. Del. May 25, 2001) (ORDER) (transferring cases to the Northern District of Illinois, Eastern Division (Chicago)); In re Pathnet Telecomm., Inc. et. al., 01-1223 (PJW) (Bankr. D. Del. May 2, 2001) (ORDER) (transferring cases to the Bankruptcy Court for the Eastern District of Virginia); In re V R Holdings, Inc., 00-4553 (MFW) (Bankr. D. Del. December 21, 2000) (ORDER) (transferring case to the Bankruptcy Court for the District of Maryland); In re RBX Corp., 00-4468 (PJW) (Bankr. D. Del. Jan. 17, 2001) (ORDER) (transferring case to the Bankruptcy Court for the Western District of Virginia, Lynchburg Division); In re American Eco Holding Corp., et al., 00-3253 (SLR) (Bankr. D. Del. December 22, 2000) (ORDER) (transferring cases to the Bankruptcy Court for the District of New Jersey); In re Premier Membership Servs., LLC, et al., 00-3802 (PJW) (Bankr. D. Del. Oct. 20, 2000) (ORDER) (transferring cases to the Bankruptcy Court for the Southern District of Florida); In re Apple Orthodontix, Inc., 00-347 (MFW) (Bankr. D. Del. March 6, 2000) (ORDER) (transferring case to the Bankruptcy Court for the Southern District of Texas).[18] See also, PC Landing Corp. v. Asia Global Crossing, Ltd. (In re PC Landing Corp.), 2004 Bankr. LEXIS 2164, at *9 (Bankr. D. Del. Nov. 5, 2004) (transferring adversary proceeding to the Bankruptcy Court for the Southern District of New York); In re Borden Chemicals and Plastics Operating Ltd. P'ship, 2004 Bankr. LEXIS 1251, at *7 (Bankr. D. Del. Aug. 23, 2004) (transferring adversary proceeding to the Bankruptcy Court for the Middle District of Louisiana); Liquidating Trust of U.S. Wireless Corp. v. Haskell & White, LLP (In re U.S. Wireless Corp.), 2004 Bankr. LEXIS 652, at *6 (Bankr. D. Del. May 18, 2004) (transferring adversary proceeding to the Central District of California); Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.), 282 B.R. 140 (Bankr. D. Del. 2002) (transferring adversary proceeding to the Western District of Kentucky).

Because all hearings and other administrative procedures related to the Receivership will be held in Connecticut, and because the parties with interest in the matter (whether as witnesses, intervenors, etc.) are more likely to be located in or near Connecticut than any other single jurisdiction, conducting the receivership and bankruptcy proceedings in Connecticut reduces the legal and travel costs of the largest number of interested parties. Even if bankruptcy were determined to be a more appropriate mechanism for administration of Receivership Property than receivership, transferring venue to Connecticut affords the District Court the opportunity to withdraw the reference and conduct the Enforcement Action and bankruptcy proceedings concurrently in the same court. Transferring venue thereby maximizes the efficiency with which assets can be equitably distributed and minimizes the chances of conflicting decisions issuing from two separate courts applying different bodies of law.

As this Court has yet to hold a hearing or otherwise consider any substantive motion filed by the Debtor, there is no waste of judicial resources and the Debtor will suffer no harm or delay in the administration of its bankruptcy Case should the Court transfer the Case. Accordingly, the interests of justice and convenience of the parties warrant transferring the venue of the Chapter 11 Case to the United States Bankruptcy Court for the District of Connecticut at the earliest possible time.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Receiver respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, approving the relief sought herein and granting such other and further relief as the Court may deem just and proper.

Dated: May 19, 2011
      Wilmington, Delaware

_Russell C. Silberglied_
Russell C. Silberglied (No. 3462)
L. Katherine Good (No. 5101)
Robert C. Maddox (No. 5356)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Phone: 302-651-7700
Fax: 302-651-7701
Email: silberglied@rlf.com
      good@rlf.com
      maddox@rlf.com

Marc E. Hirschfield
Jonathan R. Barr
Ona T Wang
James W. Day
BAKER HOSTETLER LLP
45 Rockefeller Plaza
11th Floor
New York, NY 10111
Phone: 212-589-4200
Fax: 212-589-4201
Email: mhirschfield@bakerlaw.com
      jbarr@bakerlaw.com
      owang@bakerlaw.com
      jday@bakerlaw.com

CO-COUNSEL FOR JOHN J. CARNEY AS THE
COURT-APPOINTED RECEIVER FOR MICHAEL
KENWOOD CAPITAL MANAGEMENT, LLC AND
RELATED ENTITIES